FILED

2025 Mar-17  PM 02:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| RAM-ELLSWORTH SUBDIVISION PARTNERS, LLC, | } } } | |
| Plaintiff, | } } } | |
| v. | } } } | Case No.: 5:22-cv-00779-MHH |
| CONSTRUCTION SERVICES, LLC, D/B/A MCA CONSTRUCITON, INC., *et al.*, | } } } } } } | |
| Defendants. | } | |

## MEMORANDUM OPINION AND ORDER

RAM-Ellsworth Subdivision Partners, LLC has asked the Court to reconsider its order denying RAM's motion for summary judgment on defendant Construction Services, LLC's counterclaim. Alternatively, RAM asks the Court to certify a question of law to the Alabama Supreme Court. (Doc. 60; Doc. 64; *see also* Doc. 67). This opinion resolves RAM's motions.

**I.**

Rule 54(b) of the Federal Rules of Civil Procedure governs "a district court's reconsideration of interlocutory orders." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379 (11th Cir. 2024). Interlocutory orders, or orders "that do not dispose of the whole case," include "denials of summary judgment." *Dupree v.*

1

*Younger*, 598 U.S. 729, 734 (2023). "Under Rule 54(b), district courts retain plenary power to reconsider an interlocutory order before the entry of final judgment." *Hornady*, 118 F.4th at 1379; *see also* FED. R. CIV. P. 54(b) (stating that an "order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").

"Though district courts enjoy plenary *power* to reconsider non-final rulings, they need not employ plenary *review* when doing so." *Hornady*, 118 F.4th at 1380 (italics in *Hornady*). "Indeed, in most instances district courts should hesitate before revisiting their earlier interlocutory orders; important interests of finality, stability, and predictability underly that justifiable caution." *Hornady*, 118 F.4th at 1380 (citations omitted). A "district court typically [does] not abuse its discretion when rejecting a motion to reconsider an interlocutory order if the movant simply rehashe[s] arguments already considered and rejected." *Hornady*, 118 F.4th at 1381 (citation omitted). District courts "have discretion to revisit their prior interlocutory orders, considering both the weight of the moving party's arguments and the disruption that a change would cause in light of the time that has passed since the decision was initially made." *Hornady*, 118 F.4th at 1381.

2

RAM argues that the Court should not have considered paragraphs 40 and 41 of defendant William Miller's affidavit, (Doc. 26-1), because the paragraphs contain inadmissible hearsay. (Doc. 64, p. 5; Doc. 67). In paragraph 40, Mr. Miller asserts that RAM or counterclaim defendant Retail Specialists, LLC paid Construction Services, known as MCA, on five occasions after MCA received its general contractor's license for a total of $773,234.37. (Doc. 26-1, pp. 10–11, ¶ 40). In paragraph 41, Mr. Miller states that "Retail made repeated promises of future payments verbally, via email and via text in order to induce performance, never once raising the issue about licensure after the issuance of the MCA's license, and the direction by [RAM's Rodney] Barstein to change all permits and billing over to MCA." (Doc. 26-1, p. 10, ¶ 41; *see also* Doc. 16-1, p. 2, ¶ 2).

RAM's argument "rehashe[s]" an argument in the company's motion to strike, (Doc. 30). In its summary judgment memorandum opinion, the Court denied the motion. (*See* Doc. 60, p. 21; Doc. 30); *Hornady*, 118 F.4th at 1381 (citation omitted). The Court did not discuss RAM's motion to strike at length in the summary judgment opinion. Therefore, the Court develops the analysis here.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. FED. R. EVID. 801(c). Rule 802 of the Federal Rules of Evidence makes hearsay inadmissible, subject to exceptions in other rules of evidence. FED. R. EVID. 802. In paragraph 40 of his affidavit, Mr. Miller lists

payments that RAM or Retail made to MCA after the issuance of MCA's general contractor's license. (*See* Doc. 26-1, pp. 10–11, ¶ 40). Nonverbal conduct may constitute hearsay when the person engaging in the conduct "intended the conduct to communicate a message." *United States v. Hernandez*, 864 F.3d 1292, 1307 (11th Cir. 2017); *see also United States v. Berkman*, 433 Fed. Appx. 859, 863 (11th Cir. 2011) (citing FED. R. EVID. 801(a)) ("Nonverbal conduct may qualify as a hearsay statement if the declarant intended the conduct 'as an assertion.'"). Assuming *arguendo* that the payments constitute "statements" under Rule 801(c), the statements are excepted from the prohibition on hearsay because the payments reflect RAM's "then existing state of mind." FED. R. EVID. 803(3).

Moreover, though "[t]he general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment," a district court "'may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form.'" *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (some internal quotation marks omitted) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999)). "The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." *Jones*, 683 F.3d at 1294 (citation omitted).

As MCA indicated in its response to RAM's motion to reconsider, MCA can call Mr. Miller to testify at trial about the payments listed in paragraph 40 of his affidavit. (Doc. 68, p. 5). Mr. Miller has personal knowledge "of the invoices [MCA] submitted to [RAM or Retail] and the payments received from [RAM or Retail]." (Doc. 68, p. 6). As the owner of MCA, Mr. Miller "can testify as to these payments received by MCA." (Doc. 68, p. 6). MCA also may call at trial Mr. Barstein or other RAM and Retail representatives to testify about the payments. (*See* Doc. 68, pp. 5–6).

In paragraph 41 of his affidavit, Mr. Miller describes statements Retail representatives made about future payments. (Doc. 26-1, p. 10, ¶ 41). Mr. Miller also indicates in his affidavit that Retail was RAM's agent. (Doc. 26-1, p. 3, ¶ 8 & n.1). Statements "made by [a] party's agent or employee on a matter within the scope of that relationship and while it existed" do not constitute hearsay. FED. R. EVID. 801(d)(2)(D). Because the statements Mr. Miller describes in paragraph 41 of his affidavit do not qualify as hearsay under Rule 801(d)(2)(D), the Court may consider the statements in evaluating RAM's summary judgment motion, and Mr. Miller may testify about these statements at trial.

RAM also argues that Alabama's non-licensure jurisprudence "expressly address[es] and disallow[s] cure" of non-licensure, "regardless of whether the parties had, in fact, attempted to cure" non-licensure. (Doc. 64, pp. 6–9). This argument

repackages similar contentions in RAM's summary judgment briefing. The Court addressed these arguments in its memorandum opinion. (Doc. 60, pp. 10–20); *see Hornady*, 118 F.4th at 1381 (citation omitted).

RAM cites the Alabama Supreme Court's admonition in *J & M Industries, Inc. v. Huguley Oil Co.*, 546 So. 2d 367 (Ala. 1989), that unlicensed contractors cannot avoid Alabama's licensure statute by "obtaining a license *subsequent* to the execution of the contract." 546 So. 2d at 371 (italics in *J & M*) (citation omitted); (Doc. 64, p. 6). But *McNairy v. Sugar Creek Resort*, 576 So. 2d 185 (Ala. 1991), decided nearly two years after *J & M*, expressly permits such an exception. *See generally McNairy*, 576 So. 2d 185 (concluding unlicensed contractor that substantially complied with licensing statute and subsequently obtained a license could proceed to trial in contractor's attempt to recover monies owed for construction work).

RAM argues that *McNairy* is unlike this case because MCA complied with the licensure statute after entering a contract with RAM or Retail. (Doc. 64, pp. 8–9). As explained in the Court's memorandum opinion, *McNairy* is binding, analogous, and persuasive. (Doc. 60, pp. 13–20). RAM's attempt to distinguish *McNairy* is not persuasive.

RAM urges the Court to follow *Med Plus Properties v. Colcock Construction Group, Inc.*, 628 So. 2d 370 (Ala. 1993). The *Med Plus* decision concerned a

different factual question, so it is not helpful in this case.  In *Med Plus*, the Alabama

Supreme Court did not overrule *McNairy*.  The same goes for *B.D. Stephenson*

*Trucking, LLC v. Riverbrooke Capital Partners, LLC*, No. 06-0343-WS-M, 2006

WL 2772673 (S.D. Ala. Sept. 25, 2006); (*see* Doc. 64, pp. 7–8).  In *B.D. Stephenson*,

summary judgment "hinge[d] on the following two questions: (a) was [the

unlicensed contractor] a subcontractor on the Wilkins Creek project; and (b) if so,

had it begun work on the project before Riverbrooke backed out of the contract."

*B.D. Stephenson*, 2006 WL 2772673 at *3.  Thus, like *Med Plus,* the *B.D.*

*Stephenson* decision concerned a factual issue different from the issue in this case.

Neither case is persuasive here.

 RAM contends that the Court misinterpreted *Terrell v. Oak & Alley Homes,*

*LLC*, 334 So. 3d 506 (Ala. Civ. App. 2021); (*see* Doc. 64, pp. 9–10).  As the Court

explained in its memorandum opinion, the facts of this case are distinguishable from

cases that RAM cites for the proposition that Alabama public policy voids contracts

made by unlicensed general contractors.  (*See* Doc. 64, pp. 9–10; Doc. 60, pp. 18–

20).

 Finally, RAM urges the Court to consider Alabama statutes and regulations

which indicate that, under Alabama law, "having the wrong license equals no

license."  (Doc. 64, p. 10).  As the Court stated in its memorandum opinion, "[i]f

MCA had to have a 'municipal and utility' classification on its license for the work

it performed, *McNairy* still applies because MCA substantially complied with the statute." (Doc. 60, p. 20).

## II.

RAM also asks the Court to certify questions to the Alabama Supreme Court. As the Eleventh Circuit has explained:

> When substantial doubt exists about the answer to a material state law question upon which the case turns, a federal court should certify that question to the state supreme court in order to avoid making unnecessary state law guesses and to offer the state court the opportunity to explicate state law.

*Looney v. Moore*, 861 F.3d 1303, 1314 (11th Cir. 2017) (internal quotation marks omitted) (quotation omitted); *see also Redding v. Coloplast Corp*, 104 F.4th 1302, 1313 (11th Cir. 2024) (citation omitted). RAM argues that substantial doubt exists about two issues of Alabama law: "First, there's whether *McNairy v. Sugar Creek Resorts*, 576 So. 2d 185 (Ala. 1991) is good law at all. . . . Second, there's whether mis-licensure equals non-licensure." (Doc. 64, p. 3).

With respect to *McNairy*, RAM argues that the "thirty-four-year gap" since the Alabama Supreme Court last mentioned the case "is simply too long for this Court to interpolate its viability." (Doc. 64, p. 1). The absence of a case before the Alabama Supreme Court that would allow the Supreme Court to revisit its decision

8

in *McNairy* does not make *McNairy* bad law.[1]  And, as discussed in the opinion

denying RAM's motion for summary judgment, the decision in this case is consistent

with the decision in *RC Underground, LLC v. Western Surety Co.*, No. 5:20-cv-

1222-LCB, 2021 WL 12319964 (N.D. Ala. July 14, 2021).  There, this Court held:

"While the Court is mindful that *McNairy* has been sparsely cited in the 30 years

since it was issued, this does not detract from its precedential value."  *RC*

*Underground,* 2021 WL 12319964 at *3 (footnote omitted).  Therefore, the Court

declines to certify the question of whether *McNairy* remains good law.

RAM also asks the Court to certify a question based on its contention that

MCA obtained the wrong license classification initially.  (Doc. 64, pp. 3–4).  As

RAM points out, the Alabama Supreme Court has not indicated whether mis-

licensure equals non-licensure, but the distinction does not matter for the purpose of

applying *McNairy*.  Even if mis-licensure equals non-licensure, *McNairy* still asks

whether MCA, as an unlicensed contractor, substantially complied with Alabama's

licensure statute.  The Court has found *McNairy* binding and analogous regardless

of whether MCA initially obtained the wrong license.  (Doc. 60, p. 20).

---

[1] The decisions RAM cites are inapposite.  For example, in *Thomas Learning Center v. McGuirk*, 766 So. 2d 161 (Ala. Civ. App. 1998), the Alabama Court of Civil Appeals considered whether a violation of the general contractor licensing statutes could support a claim for negligence.  766 So. 2d at 167–72.  As a threshold matter, "to determine whether [the unlicensed contractor] was subject to the provisions of the general-contractor licensing statutes," the Alabama Court of Civil Appeals had to "determine whether 'the cost of [the unlicensed contractor's] undertaking' was $20,000 or only $19,610."  766 So. 2d at 168.  This has nothing to do with the issue the Alabama Supreme Court decided in *McNairy*.

## III.

Accordingly, the Court denies RAM's motion to reconsider and RAM's motion to certify a question of law to the Alabama Supreme Court.  The Clerk shall please TERM Docs. 64 and 67.

**DONE** and **ORDERED** this March 17, 2025.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE